**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JASON M. JONES, #70541 | ) ) ) |
| Plaintiff, | ) ) 3:11-cv-00047-LRH-WGC |
| vs. | ) ) **SCREENING ORDER** |
| DOROTHY NASH HOLMES, *et al.*, | ) ) |
| Defendants. | ) / |

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. On April 6, 2011, this court issued a Screening Order dismissing this action as barred by the statute of limitations (ECF #3), and judgment was entered on April 7, 2011 (ECF #4). On July 12, 2012, the Ninth Circuit Court of Appeals vacated the judgment and remanded to this court (ECF #16). Accordingly, the court now reviews the complaint in light of the Ninth Circuit order.

**I. Plaintiff's Motion for Appointment of Counsel**

Plaintiff has filed a motion seeking the appointment of counsel in this case (ECF #1-2). A litigant in a civil rights action does not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In very limited circumstances, federal courts are empowered to request an attorney to represent an indigent civil litigant. The circumstances in which a court will make such a request, however, are exceedingly rare, and the court will make the request under only extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 799-800 (9th Cir. 1986); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

A finding of such exceptional circumstances requires that the court evaluate both the likelihood

of success on the merits and the plaintiff's ability to articulate his claims in pro se in light of the complexity of the legal issues involved. Neither factor is dispositive, and both must be viewed together in making a finding. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991)(citing *Wilborn, supra*, 789 F.2d at 1331). The district court has considerable discretion in making these findings. The court will not enter an order directing the appointment of counsel at this time. Plaintiff has demonstrated his ability to articulate his claims in pro se thus far and the legal issues do not appear complex. Plaintiff's motion for the appointment of counsel is denied without prejudice.

## II. Screening Pursuant to 28 U.S.C. § 1915A

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010); *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hebbe*, 627 F.3d at 342. While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id., see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III. Instant Complaint**

Plaintiff, who is currently incarcerated at Lovelock Correctional Center ("LCC"), has sued numerous Nevada Department of Corrections ("NDOC") defendants. Plaintiff alleges the following:

3

in 1996 prosecutors tried to coerce plaintiff into testifying against a known Aryan Warrior prison gang member in his murder trial. Plaintiff refused and in fact testified truthfully in the inmate's defense. Defendant prosecutor Dorothy Nash Holmes and NDOC prison officials retaliated against him by labeling him a snitch. Defendants SDCC warden Williams, and associate wardens Cheryl Burson and Jeffrey Howe, Doe classification committee members, NDOC director Howard Skolnik, prison administrators James Cox, Steve Sure, Paula Miller, and SDCC caseworkers Kay Weiss and Daniel all had prior knowledge of threats to plaintiff by other inmates and still placed him in the general population at SDCC.

On December 21, 2008, plaintiff was attacked at SDCC by an unknown party yards away from defendant unit officer Riley. Defendants Bloomfield, Tate, Komusoff, a nurse known as "Big John" and a female Doe defendant forced plaintiff to walk to medical despite his injuries. At the infirmary, defendants "Big John," Fran Dressler and Cynthia Sybilla gave plaintiff a "cursory inspection" only, despite severe scalp lacerations and what was later determined to be a skull fracture. Defendant doctors Sanchez and Aranas concurred that no treatment was necessary and discharged plaintiff. Defendant officers Mataley and Panzzo then forced him to walk to disciplinary segregation ("dis seg") without adequate clothing for the middle of the night in December. At dis seg, defendant officers Moten and Wolf placed him in a cell without any basic necessities or property. Plaintiff filed an emergency grievance for medical attention; defendant officer McCrey denied the grievance and stated that plaintiff already had been seen by doctors. Three days later, plaintiff was transported to Valley Hospital where he underwent brain surgery and was hospitalized for several weeks.

Plaintiff apparently alleges that the attack and lack of medical response occurred "under the supervision of" defendants Lt. Hertz, Sgt. Mustafa and Sgt. Bush, who are "responsible for security and operations of SDCC" at the prison yard level.

When plaintiff was released from the hospital he was moved to the infirmary at High Desert State Prison ("HDSP"). Defendant HDSP doctor Mumford refused to provide the treatment prescribed by the treating neurosurgeon from Valley Hospital, causing plaintiff to suffer unnecessarily.

Upon release from the infirmary, defendants HDSP warden D.W. Nevan, associate wardens Morrow, Baca and Hinson, and Doe classification committee members again returned him to the general

4

population despite "direct knowledge" that plaintiff was particularly vulnerable to attack due to his injuries and his label as a snitch and despite plaintiff's request for protection.

First, plaintiff alleges that defendant Nash Holmes retaliated against him for refusing to testify against another inmate. "A prisoner suing prison officials under [§] 1983 for retaliation must allege that he [or she] was retaliated against for exercising his [or her] constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (*per curiam*); *see also Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Austin v. Terhune*, 367 F.3d 1167-1170-71 (9th Cir. 2004); *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *Vignolo v. Miller*, 120 F.3d 1075, 1077-78 (9th Cir. 1997); *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Such claims must be evaluated in the light of the deference that must be accorded to prison officials. *See Pratt*, 65 F.3d at 807; *see also Vance v. Barrett*, 345 F.3d 1083, 1093 (9th Cir. 2003). The prisoner must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Compare Pratt*, 65 F.3d at 807 (finding insufficient evidence) with *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient evidence). Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). Finally, the prisoner must demonstrate that his First Amendment rights were actually chilled by the alleged retaliatory action. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *see also Rhodes*, 408 F.3d at 568 (explaining that, at the pleading stage, a prisoner is not required "to demonstrate a *total* chilling of his [or her] First Amendment rights to file grievances and to pursue civil litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced.") (emphasis in original); *Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to ground a retaliation claim).

Prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocate for the State performing functions "intimately associated with the judicial

phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 124-26 (1997); *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005); *Genzler v. Longanbach*, 410 F.3d 630, 636-37 (9th Cir. 2005); *KRL v. Moore*, 384 F.3d 1105, 1110 (9th Cir. 2004); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). However, plaintiff alleges that this prosecutor retaliated against him when he refused to testify against another inmate by labeling him a snitch–which can place an inmate in grave danger of attack by other inmates. Prosecutorial immunity may not extend to such actions. Plaintiff states a colorable retaliation claim against Nash Holmes.

Plaintiff also alleges violations of his Eighth Amendment rights. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). However, "The Constitution 'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349).

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal measure of life's necessities'[.] . . .
>
> The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'

*Farmer*, 511 U.S. at 834.

Under the Eighth Amendment, "[p]rison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and

6

disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 2002; *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (*per curiam*); *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prisoner need not wait until he is actually injured to state a claim and obtain relief. See *Farmer*, 511 U.S. at 845. Allegations that prison officials called a prisoner a "snitch" in the presence of other inmates can state a claim for deliberate indifference to an inmate's safety. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989).

A detainee or prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Id*. at 106. The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id*.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle*, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin v. Smith*,

1  974 F.2d 1050, 1050 (9th Cir. 1992) (*overruled on other grounds*)*, WMX Techs., Inc. v. Miller*, 104 F.3d
2  1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish deliberate
3  indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).
4  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate
5  indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

6        Delay of, or interference with, medical treatment can also amount to deliberate indifference. *See*
7  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002);
8  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.
9  1996); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *McGuckin v. Smith*, 974 F.2d 1050, 1059
10 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, (9th Cir. 1997)
11 (en banc); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging
12 that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that
13 the delay led to further injury. *See Hallett*, 296 F.3d at 745-46; *McGuckin*, 974 F.2d at 1060; *Shapley*
14 *v. Nev. Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

15       Plaintiff states colorable Eighth Amendment claims for deliberate indifference to a serious threat
16 to his safety against defendants SDCC warden Williams, associate wardens Cheryl Burson and Jeffrey
17 Howe, Doe classification committee members, NDOC director Howard Skolnik, prison administrators
18 James Cox, Steve Sure, Paula Miller, and SDCC caseworkers Kay Weiss and Daniel, officer Riley, as
19 well as HDSP's D.W. Nevan, associate wardens Morrow, Baca and Hinson, and Doe classification
20 committee members.

21       Plaintiff states colorable Eighth Amendment claims for deliberate indifference to his serious
22 medical needs against defendants Bloomfield, Tate, Komusoff, nurse "Big John," Fran Dressler, Cynthia
23 Sybilla, and doctors Sanchez, Aranas, and Mumford. With his allegations that despite obvious head
24 injuries officers Mataley, Panzzo, Moten and Wolf placed him in dis seg without adequate clothing or
25 basic necessities for three days, plaintiff states Eighth Amendment claims against the four officers.

26       Plaintiff alleges that defendant McCrey violated his Eighth Amendment rights by denying his
27 grievance seeking medical attention on the basis that he was already seen by medical. He also alleges,
28 without elaboration, that defendants Hertz, Mustafa and Bush were responsible for SDCC security and

operations at the yard level. However, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). A plaintiff can establish the necessary causal connection for supervisory liability by alleging that the defendant "set[] in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1207-08 (9th Cir. 2011) (internal quotations, original alterations, and citations omitted). Thus, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Plaintiff fails to set forth sufficient allegations to state a claim against defendant McCrey. He also fails to set forth any allegations to show that Hertz, Mustafa or Bush were aware of either a serious threat to plaintiff's safety or his serious medical needs and acted with deliberate indifference. Accordingly, McCrey, Hertz, Mustafa and Bush are dismissed from this action.

Finally, while plaintiff has named Max Nuneker as a defendant, he sets forth no allegations against him. As such, defendant Nuneker is dismissed from this action.

No other federal constitutional claims are stated in this complaint.

**IV. Conclusion**

**IT IS THEREFORE ORDERED** that plaintiff's retaliation claim against defendant Nash Holmes **MAY PROCEED**.

**IT IS FURTHER ORDERED** that plaintiff's Eighth Amendment claims for deliberate indifference to a serious threat to his safety against defendants SDCC warden Williams, associate wardens Cheryl Burson and Jeffrey Howe, Doe classification committee members, NDOC director Howard Skolnik, prison administrators James Cox, Steve Sure, Paula Miller, and SDCC caseworkers

9

Case 3:11-cv-00047-LRH-WGC   Document 19   Filed 10/16/12   Page 10 of 13

Kay Weiss and Daniel, officer Riley, HDSP's D.W. Nevan, associate wardens Morrow, Baca and Hinson, and Doe classification committee members **MAY PROCEED**.

**IT IS FURTHER ORDERED** that plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs against defendants Bloomfield, Tate, Komusoff, nurse "Big John," Fran Dressler, Cynthia Sybilla, doctors Sanchez, Aranas, and Mumford, and officers Mataley, Panzzo, Moten and Wolf **MAY PROCEED**.

**IT IS FURTHER ORDERED** that all claims against defendants McCrey, Nuneker, Hertz, Mustafa, and Bush are **DISMISSED**. These defendants are dismissed from this action.

**IT IS FURTHER ORDERED** that the Clerk shall **DETACH** and **FILE** plaintiff's motion for appointment of counsel (ECF #1-2).

**IT IS FURTHER ORDERED** that plaintiff's motion for counsel is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** as follows:

1. Given the nature of the claims that the court has permitted to proceed, this action is **STAYED** for ninety (90) days to allow plaintiff and defendant(s) an opportunity to settle their dispute before an answer is filed or the discovery process begins. During this ninety-day stay period, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery. The court will decide whether this case will be referred to the court's Inmate Early Mediation Program, and the court will enter a subsequent order. Regardless, on or before ninety (90) days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior the end of the 90-day stay. If the parties proceed with this action, the court will then issue an order setting a date for the defendants to file an answer or other response. Following the filing of an answer, the court will issue a scheduling order setting discovery and dispositive motion deadlines.

2. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both

10

have given something up and both have obtained something in return.

3. The Clerk shall electronically **SERVE** a copy of this order and a copy of plaintiff's complaint on the Office of the Attorney General of the State of Nevada, attention Pamela Sharp.

4. The Attorney General's Office shall advise the Court within twenty-one (21) days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of settlement. No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

**IT IS SO ORDERED.**

DATED this 9th day of October, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 |   |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

```
                    ,            )    3:00-CV-0000-____ (____)
                                 )
         Plaintiffs,             )
    vs.                          )    REPORT OF THE OFFICE OF THE
                                 )    ATTORNEY GENERAL RE:
                                 )    RESULTS OF THE 90-DAY STAY
                       , et al., )
                                 )
         Defendants.             )
_____)
```

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case: The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature bloc.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the court of its intent to proceed with this action.

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. *(If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)*

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations**. [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature bloc.]

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the court of its intent to proceed with this action.

\_\_\_\_ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____    _____
Print                                                                                               Signature

Address:   _____   Phone: _____

_____   Email: _____

_____