UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JASON M. JONES, | 3:11-cv-00047-LRH-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| DOROTHY NASH HOLMES, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court are Plaintiff's Motions for a Temporary Restraining Order (Doc. # 104)[1] and Preliminary Injunction (Doc. # 105).[2] Defendants filed a response (Doc. # 108) and errata to their response (Doc. # 109)[3] and Plaintiff filed a reply (Doc. # 110).

After a thorough review, the court recommends that Plaintiff's motions be denied.

# I. BACKGROUND

At all relevant times, Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl., Doc. # 4.) He is a pro se litigant and brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Plaintiff was allowed to proceed with claims against Aranas, Baca, Bloomfield, Burson, Cox, Daniel, Dressler, Hinson, Dorothy Nash Holmes, Howe, Komusoff, Mataley, Miller, Morrow, Moten, Mumford, Nevan, Panzzo, Riley, Sanchez,

---

[1] Refers to court's docket number.

[2] These documents are identical.

[3] This document merely clarifies that their response (Doc. # 108) applies to both the request for a temporary restraining order (Doc. # 104) and preliminary injunction (Doc. # 105).

1  Skolnick, Sure, Sybilla, Tate, Weiss, Williams, Wolf, Nurse "Big John," and Doe classification
2  committee members. (Screening Order, Doc. # 19.)
3  　　　　Plaintiff was allowed to proceed with the following claims: (1) a retaliation claim against
4  Dorothy Nash Holmes related to his allegation that when acting as a prosecutor she retaliated
5  against Plaintiff when he refused to testify against another inmate by labeling him a snitch which
6  placed him in danger of attack by other inmates; (2) Eighth Amendment deliberate indifference
7  to a serious risk to his safety against Williams, Burson, Howe, Doe Classification Committee
8  members, Skolnick, Cox, Sure, Miller, Weiss, Daniel, Riley, Nevan, Morrow, Baca and Hinson
9  related to allegations that they knew of threats to Plaintiff by other inmates and still placed him
10 in general population at Southern Desert Correctional Center (SDCC) where he was
11 subsequently attacked; (3) Eighth Amendment deliberate indifference to serious medical needs
12 against Bloomfield, Tate, Komusoff, nurse "Big John," Fran Dressler, Cynthia Sybilla, doctors
13 Sanchez, Aranas and Mumford related to allegations that despite severe skull injuries, he was
14 given only a cursory inspection and the doctors concurred no treatment was necessary; and
15 (4) Eighth Amendment deliberate indifference against Mataley, Panzzo, Moten and Wolff
16 related to allegations that he was forced to walk to disciplinary segregation without adequate
17 clothing in the middle of the night in December, and placed him in a cell for three days without
18 basic necessities. (*See* Doc. # 19.)
19 　　　　Plaintiff has filed numerous motions requesting injunctive relief in this action, each of
20 which has been denied by the court, usually because the motions are unrelated to the claims
21 being asserted in this action or otherwise fail to meet the prerequisites for obtaining injunctive
22 relief. (*See e.g.,* Docs. # 37, # 39, # 52, # 55, # 57, # 58, # 59, # 61, # 62, # 63, # 68, # 69, # 81,
23 # 84, # 91.)
24 　　　　In this motion, Plaintiff reiterates his allegation that he was assaulted in 2008 at SDCC as
25 a result of Dorothy Nash Holmes labeling him a snitch, and his skull was cracked open. (Docs.
26 # 104/105 at 1.) He was subsequently taken to the hospital, and underwent brain surgery. (*Id*.) He
27 contends that NDOC failed to follow his surgeon's medical orders. (*Id*.) Plaintiff asserts that he
28 was sent back to SDCC in July 2014, and was assaulted again on October 3, 2014, was written

1  up and placed in the "hole". (*Id*.) he contends that he is going to be forced to go somewhere else
2  and NDOC is not fully aware that he will be safe. (*Id*.) He requests to remain where he is until he
3  is provided an opportunity to go to a "protective camp." (*Id*.)

4  He also states that he is being refused the right to education that he has signed up for, and
5  has sent kites to no avail. (*Id*.) He also mentions that his mail is being tampered with. (*Id*.)

6  In their response, Defendants assert that Plaintiff requested protective custody at SDCC
7  on October 3, 2014 because of "gambling debts" and he was immediately placed in a secure day
8  room. (Doc. # 108 at 2.) Previously, in February 2014, Plaintiff had requested to be sent to
9  SDCC, and when he was told that the decision was up to the classification committee, he began
10 making threats to his caseworker. (*Id*.) Defendants assert that Plaintiff refused to be considered
11 for placement in administrative segregation and is pending transfer to Ely State Prison (ESP)
12 where he will be maintained in a closed custody environment which will provide him with the
13 greatest security. (*Id*.) They also assert that he has not been denied educational services, but is
14 enrolled in correspondence education. (*Id*.)

15 In his reply, Plaintiff asserts that he "just said" he was requesting transfer due to
16 gambling debts, but in reality it was for his safety following the last attack. (Doc. # 110.) He also
17 states that he was asking to stay in administrative segregation at High Desert State Prison
18 (HDSP) due to his sentence structure and the fact that he did not have a lot of time until parole
19 eligibility or expiration. (*Id*.) He maintains that he did report the most recent assault. (*Id*.)

## II. LEGAL STANDARD FOR INJUNCTIVE RELIEF

21 The purpose of a preliminary injunction or temporary restraining order is to preserve the
22 status quo if the balance of equities so heavily favors the moving party that justice requires the
23 court to intervene to secure the positions until the merits of the action are ultimately determined.
24 *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an
25 "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S.
26 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the
27 competing claims of injury and must consider the effect on each party of the granting or
28 withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555

U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*.

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is

1 not to be granted unless both the facts and the law clearly favor the moving party and extreme or
2 very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir.
3 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*
4       Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must
5 satisfy additional requirements when seeking preliminary injunctive relief against prison
6 officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

10 18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary
11 injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998
12 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of
13 federal courts and to protect the bargaining power of prison administrators-no longer may courts
14 grant or approve relief that binds prison administrators to do more than the constitutional
15 minimum." *Id.* at 999.

### III. DISCUSSION

17       With respect to Plaintiff's request to stay in HDSP's administrative segregation housing,
18 Plaintiff has not demonstrated he meets the prerequisites for injunctive relief. He included no
19 information about where he was to be transferred and whether he would face a safety risk at that
20 point so the court cannot determine whether he in fact had a risk of irreparable injury. Moreover,
21 it appears that Plaintiff's request is moot in light of his transfer to ESP (*see* Doc. # 111) as he has
22 not indicated he faces any risk to his safety there. As such, Plaintiff's motions should be denied
23 insofar as this request for relief is concerned.
24       As to Plaintiff's complaint regarding his education, this issue is completely unrelated to
25 any claims pending in this action. Moreover, there is no constitutionally recognized right to a
26 prison education or programming. Therefore, Plaintiff's motions should be denied in this respect
27 as well.
28 ///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **<u>DENYING</u>** Plaintiff's motions for temporary restraining order and preliminary injunction (Docs. # 104, # 105.)

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: May 26, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE